UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ANTHONY DAVIS, #337282

Petitioner,

v.                                                  2:07CV586

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

Respondent.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.

## I.  STATEMENT OF THE CASE

### A.  Background

On September 23, 2004, in the Circuit Court for the City of Portsmouth, Virginia, petitioner was convicted of one count of robbery, one count of abduction with the intent to extort money, two counts of abduction, three counts of use of a firearm during the commission of a felony, and one count of unlawful wounding. As a result of the convictions, petitioner was sentenced to serve thirty-seven years imprisonment.

Petitioner appealed to the Virginia Court of Appeals, but on April 29, 2005, the appeal was denied by a single judge, and on July 7, 2005, the decision was upheld by a three-judge panel. Petitioner appealed to the Supreme Court of Virginia, which refused the appeal on November 10, 2005, and a petition for rehearing was denied on January 25, 2006.

On January 29, 2007, petitioner filed a petition for writ of habeas corpus in the Portsmouth Circuit Court, but on April 13, 2007, the petition was dismissed.  Petitioner appealed to the Supreme Court of Virginia, which refused the appeal on November 27, 2007.

On December 13, 2007, petitioner filed a petition for writ of habeas corpus in this Court, and on February 25, 2008, respondent filed a motion to dismiss and Rule 5 answer.  This matter is now ripe for consideration.

### B.  Grounds Alleged

Petitioner alleges the following grounds:

1.  Petitioner's Fifth and Fourteenth Amendment rights were violated when he was denied the opportunity to be proven guilty beyond a reasonable doubt of robbery;

2.  Petitioner's Fifth and Fourteenth Amendment rights were violated when he was denied the opportunity to be proven guilty beyond a reasonable doubt of abduction;

3.  Petitioner's Fifth and Fourteenth Amendment rights were violated when he was denied the opportunity to be proven guilty beyond a reasonable doubt of unlawful wounding;

4.  Ineffective assistance of counsel because:

    a.  counsel did not understand the indictment for robbery;

    b.  counsel failed to appeal the trial court's ruling on the objection to the chain of custody;

    c.  counsel failed to challenge on appeal the sufficiency of the indictments for robbery and abduction; and

    d.  of the cumulative effects of the errors assigned in 4(a) through (c) above.

### II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.  Motion to Dismiss Standard

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is construed in the light most favorable to the plaintiffs and their allegations are taken as true. See Brower v. County of Inyo, 489 U.S. 593, 598 (1989)(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The complaint should not be dismissed unless it appears to a certainty that the plaintiff can prove no facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001); Martin Marietta Corp. v. Int'l Telecomms. Satellite Org., 991 F.2d 94, 97 (4th Cir. 1993). The courts must construe the complaint liberally in favor of the plaintiffs, even if recovery appears remote and unlikely. In ruling on a 12(b)(6) motion, the court primarily considers the allegations in the complaint but may consider attached exhibits and documents incorporated by reference. See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985); Wolford v. Budd Co., 149 F.R.D. 127, 129-32 (W.D. Va. 1993).

### B.  Standard of Review for State Court Findings

The federal statute regarding review of state court habeas corpus actions provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

3

the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(2000).

This standard, adopted by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, is consistent with the Fourth Circuit's interpretation of 28 U.S.C. § 2254(d) prior to the passage of the new law. In <u>Fields v. Murray</u>, 49 F.3d 1024 (4th Cir. 1995), the court held that a review of a state court finding, which is entitled to a presumption of correctness, compels the habeas court to accord a high measure of deference to the state court. <u>See id.</u> at 1032-33 (citing <u>Rushen v. Spain</u>, 464 U.S. 114, 120 (1983); <u>Sumner v. Mata</u>, 455 U.S. 591, 598 (1982)). As stated in <u>Marshall v. Lonberger</u>, 459 U.S. 422 (1983), "[t]his deference requires that a federal habeas court more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair [] support' in the record." <u>Id.</u> at 432.

### C. Petitioner's Claims are Exhausted and are Subject to Federal Review.

The exhaustion requirement dictates that a petitioner must first present his claims for relief to state courts before a petition for habeas corpus may be granted by the federal courts.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

4

. . . .

(c) An applicant shall not be deemed to have
exhausted the remedies available in the courts of
the State, within the meaning of this section, if
he has the right under the law of the State to
raise, by any available procedure, the question
presented.

28 U.S.C. §§ 2254(b)-(c)(2000).

A claim raised in a federal petition for writ of habeas corpus must be the same claim as that presented in state proceedings. See Picard v. Connor, 404 U.S. 270, 275-76 (1971); Pitchess v. Davis, 421 U.S. 482, 487 (1975); Joseph v. Angelone, 184 F.3d 320, 325 (4th Cir. 1999); Beck v. Angelone, 113 F. Supp.2d 941, 960-61 (E.D. Va. 2000); see also Anderson v. Harless, 459 U.S. 4, 6 (1982); Duncan v. Henry, 513 U.S. 364, 365 (1995); Satcher v. Pruett, 126 F.3d 561, 573 (4th Cir. 1997). Respondent concedes, and the Court agrees, that for purposes of federal review, petitioner's claims are exhausted.

### D.  Facts of the Case

The facts in petitioner's case were set forth in the Virginia Court of Appeals' per curium opinion and are as follows:

[T]he evidence proved that on November 13, 2003
around 1:30 p.m. appellant and two men entered a
store called "Playaz Gear" located in the City of
Portsmouth, Virginia.  Ziad Ismail, the store
manager, Courtney Russell, an employee, and Edward
Seabron, a customer, were present in the store.

Appellant entered the store first followed by the
other two men. Appellant walked to the back of the
store where the shoes were located, grabbed a
Timberland shoe, and asked for his size.  Ismail
went to the back room to get the shoes for
appellant.  When Ismail returned, appellant was
wearing a white Averix leather jacket.  The other
two men were still inside the store; one was
located in the middle of the store and the other
man was located in the front of the store near the
door.  Ismail gave the shoes to appellant and said,

5

"I give you a good deal." At that point, appellant, who was holding the shoes in his left hand, pulled out a gun with his right hand. Then appellant said, "[h]old up, your hand up" and "[a]ll of you go in the back." Ismail saw the other two men start grabbing jerseys from the store. Russell and Seabron walked to the back storeroom and Ismail followed them, walking four to five feet to the back where he stood in the doorway. While still pointing the gun, appellant shouted, "[k]eep you hand up, don't look, don't look back." At some point the two men stopped grabbing the jerseys. Then one of them grabbed a box from behind the counter, and they put the jerseys in the box and left the store. Appellant backed out of the store, while still watching Ismail, Russell, and Seabron and holding the gun.

Ismail immediately followed appellant and chased him around a corner to where a vehicle was parked. Ismail caught appellant, tackled him to the ground, grabbed the gun, and started wrestling with appellant. During the struggle, the hammer of the gun struck and cut Ismail's hand. In addition, appellant hit and cut Ismail's forehead with the gun during the struggle. Eventually, Ismail got the gun away from appellant. Then appellant pushed Ismail and entered the front passenger seat of the vehicle. The other two men had also entered the vehicle. Ismail smashed the vehicle's back and side windows as it took off.

Seabron positively identified appellant in court as one of the three men who robbed the Playaz Gear store on November 13, 2003. Seabron testified that appellant and the other two men entered the store together shortly after Seabron had entered the store. Seabron confirmed that appellant pulled out a gun and ordered him and a woman employee, both of whom were near the front cash register, to the back of the store. They complied, with the woman entering the back room first followed by Seabron and then Ismail. Seabron stated he walked fifty feet or more to the back storage room. Seabron testified that appellant also told him not to look at him or he would shoot, because he didn't like to leave any witnesses. Seabron feared for his life while he was in the back storage room.

Russell confirmed that she was working at Playaz Gear on November 13, 2003 at the time of the robbery. Russell positively identified appellant as one of the three men who entered the store together and then robbed the store. Russell

confirmed that she was in the front of the store
with a customer by the cash register when the three
men entered and that Ismail was in the back.  After
about I've minutes, Russell saw appellant, who was
in the back of the store, pull out a gun. As he
pointed the gun, appellant told Russell and the
customer to come to the back, and they complied.
Russell believed that she was in the back two to
three minutes during the robbery.  She remembered
appellant telling them not to look at him and if
they stayed still that no one would get hurt.
Russell saw the two men leave the store first,
followed by appellant. She also saw Ismail run
after them. Russell called the police.

At around 1:45 p.m. on November 13, 2002 Israel
Cruz, who was working at Prestige Auto Brokers, saw
a vehicle enter the parking lot of that business.
Cruz saw the vehicle come across the front of the
building and then park by the side.  Cruz noticed
that the vehicles's back window was shattered.
Cruz saw three men exit the vehicle and leave the
parking lot area. Cruz walked beside the vehicle
and saw jerseys and a "nice jacket" inside it.
Cruz walked past the vehicle to the street to see
where the three men had gone, and then within a few
seconds he came back and walked by the side of the
vehicle again.  At that point, Cruz noticed a gun
inside the vehicle on the rear passenger seat.
Within two to three minutes, the police arrived.
Cruz told them that a gun was in the back of the
vehicle.  No one else approached the vehicle from
the time Cruz saw the jerseys until the police
arrived.  Photographs of the vehicle and the gun
identified by Cruz were admitted into evidence.

Sergeant J.D. Howton, who responded to Prestige
Auto Brokers, found a vehicle there which matched
the description of the vehicle used by the robbery
suspects. The back window was broken out, and there
was a gun inside the vehicle along with new mer-
chandise. Allison Coles, employed by the Portsmouth
Police Department, responded to Prestige Auto
Brokers to process the vehicle.  She recovered the
gun which was admitted into evidence.

Around 1:45 p.m. on November 13, 2003 Officer
Robert C. McDaniel saw appellant sitting on a porch
at 3909 Turnpike Road in the City of Portsmouth,
which was located in the direction the robbery
suspects were last seen running towards.  McDaniel
approached appellant because he matched the
description of one of the persons who had just
robbed the Playaz Gear store.  Sometime thereafter,

Ismail positively identified the three men, including appellant, that were involved in the robbery.

According to Ismail, appellant took a white jacket and Timberland shoes from the store, valued between $700 and $800. In addition, jerseys and NFL jackets valued at between $4,000 and $5,000 were taken during the robbery. Due to the injuries Ismail sustained in the struggle with appellant, he required six stitches in his hand and three stitches in his forehead.

A store surveillance videotape of the robbery, admitted into evidence as illustrative evidence of Ismail's testimony, indicated that appellant and the two men entered the store at 1:36 p.m. and left the store at 1:40 p.m.

Ismail, called as a witness by appellant, testified that Playaz Gear is a sole proprietorship owned by his daughter, Janet Hannah Ismail. Ismail sold the business to his daughter in 2002. As of November 13, 2003, Ismail was working as a manager in the store and acting as a buyer. On the day of the robbery, Ismail was in charge of the store. His daughter was not there. Ismail described Playaz Gear as a family business. He stated that the property in the store belonged to him and his daughter and that his daughter's name is on the business license. Ismail ordered the jerseys for the store from various companies. Ismail's daughter signed checks to pay the store's bills.

Davis v. Commonwealth, Rec. No. 2278-04-1, Va. Ct. App. Ord. at 1-4.

**1.  The Evidence at trial was sufficient to support the convictions.**

The standard of review in a habeas corpus proceeding is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 324 (1979). In Wright v. West, 505 U.S. 277 (1992), the Supreme Court held that:

In Jackson, we emphasized repeatedly the defer-ence owed to the trier of fact and, correspond-ingly, the sharply limited nature of constitutional sufficiency review.   We said that "all of the

8

> evidence is to be considered in the light most
> favorable to the prosecution," that the prosecution
> need not affirmatively "rule out every hypothesis
> except that of guilt," and that a reviewing court
> "faced with a record of historical facts that
> supports conflicting inferences must presume--even
> if it does not affirmatively appear in the record--
> that the trier of fact resolved any such conflicts
> in favor of the prosecution, and must defer to that
> resolution."

Id. at 207-97 (citations omitted). In the present case the Court has fully reviewed the trial transcripts and has determined that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to convict petitioner. Petitioner argues for the application of hindsight to what were issues of weight and credibility, properly resolved by the trier of fact.

Petitioner alleges that the Commonwealth failed to prove beyond a reasonable doubt that he robbed Ismail of personal property, arguing that Ismail's daughter owned the store and the merchandise, which was the subject of the robbery, (Claim 1). The Virginia Court of Appeals found that the evidence proved that Ismail was working as the manager of the store at the time of the robbery. The court determined that Ismail had custody and control of the property, including the shoes and jackets taken during the robbery by petitioner. Under the circumstances, the court found that Ismail had constructive possession of the property in the store. The theft, accomplished through the use of a firearm, was clearly proven at trial, therefore the evidence was sufficient for the trier of fact to find petitioner guilty of robbery. The claim is without merit and should be DISMISSED.

Petitioner alleges that the Commonwealth failed to prove beyond a reasonable doubt that the abduction was "separate and apart" from the robbery, (Claim 2). (Br. in Support of Pet. at 2.) Petitioner

argues that, "[i]n this case, the abduction was incidental to the robbery.  No more force was used than to effectuate the robbery." (Br. at 3.)  The Virginia Court of Appeals took a more expansive approach, saying that "asportation to facilitate the commission or completion of a robbery is not an element inherent in, or necessary to the robbery," relying upon Phoung v. Commonwealth, 424 S.E.2d 712, 715 (Va. 1992). Noting that petitioner demanded at gunpoint that a customer and a clerk move from the front of the store to the back of the store while the robbery was taking place, the court observed that "[t]he asportations of Ismail, Seabron and Russell were unnecessary to accomplish the robbery." Davis, Rec. No. 2278-04-01 Ord. at 6.  The claim is without merit and should be DISMISSED.

Petitioner alleges that the Commonwealth failed to prove beyond a reasonable doubt that he unlawfully wounded Ismail, (Claim 3). Petitioner argues that the record is devoid of any evidence to prove his intent to wound Ismail.  Noting that Ismail suffered a wound to his head and hand, which required stitches, and a blow to the head when petitioner struck him with the gun, the Virginia Court of Appeals found that sufficient circumstances exited to support the trial court's finding that petitioner acted with requisite intent.  It should be noted that the unlawful wounding charge was originally brought as a malicious wounding but was reduced at the conclusion of the trial.  Petitioner received the benefit of the doubt in the form of a reduced charge.  The claim is without merit and should be DISMISSED.

The Court notes that in each of the evidentiary claims, petitioner closes his argument with the conclusion that if the evidence is insufficient to support the primary charge (e.g. robbery), then he

cannot be found guilty of the related charge of use of a firearm in the commission of the offense.  The conclusion is without merit and will not be further addressed by the Court.

The findings of the Virginia Court of Appeals are neither contrary to nor an unreasonable application of federal law, nor do they reflect an unreasonable determination of the facts.  Therefore, this Court may defer to the findings which support petitioner's convictions.

**2.  <u>Petitioner did not receive ineffective assistance of counsel</u>.**

The standards upon which claims of ineffective assistance of counsel are to be judged are relatively clear.  They were established in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and have been applied on numerous occasions by this Court.  In <u>Strickland</u>, the Supreme Court approved as the proper standard for attorney performance that of "reasonably effective assistance."  <u>Id</u>. at 687.  The Court stated:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
> . . . .
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 686-87.

There are, therefore, two elements of the Strickland test, each of which must be met before the conduct of counsel can be found constitutionally defective. First, petitioner must show that he received deficient legal representation, measuring the competency of his counsel against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Petitioner must also show actual prejudice; that is, he "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997)(quoting Murray v. Carrier, 477 U.S. 478, 494 (1986); Poyner v. Murray, 964 F.2d 1404, 1425 (4th Cir. 1992)).

The burden on petitioner is to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. That translates into a reasonable probability that "absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In analyzing trial counsel's performance under the "deficiency" prong of Strickland, a reviewing court is required to be highly deferential in scrutinizing counsel's tactics. See Bennett v. Angelone, 92 F.3d 1336, 1349 (4th Cir. 1996). Further, reviewing courts are admonished to "not permit the benefit of hindsight to impact . . . review." Bell v. Evatt, 72 F.3d 421, 429 (4th Cir. 1995)(citing Strickland, 466 U.S. at 689).

Petitioner asserts that his counsel was ineffective because she did not understand the robbery indictment, (Claim 4(a)). However, there is nothing in the record that remotely addresses or supports this claim. Counsel clearly understood what she was doing. Failure of counsel to do what his or her client wants, as opposed to what the defense needs, has never been a basis upon which habeas relief has been granted. Petitioner's counsel faced overwhelming evidence: petitioner was positively identified, the gun he used was recovered from the car he drove, some of the property was recovered, and there was a videotape of the robbery. Counsel did well in getting the malicious wounding charge reduced to unlawful wounding, she made a motion to strike the evidence, she did everything expected of a defense attorney in a difficult case. The claim is without merit and should be DISMISSED.

Petitioner claims that his counsel was ineffective because she failed to raise the issue of the trial court's rulings on the chain of custody for the gun and videotape of the robbery, (Claim 4(b)). However, petitioner offers no support for this claim. Courts have traditionally deferred to decisions made by counsel regarding appeal, recognizing that no counsel can expect to be heard on every issue in every case, that they have a right to pursue the strongest claims, and that they are not forced to pursue all claims. As the Fourth Circuit said in <u>Burkel v. Angelone</u>, 208 F.3d 172, 189 (2002), a reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis." With that in mind, the claim is without merit and should be DISMISSED.

Petitioner alleges that counsel was ineffective for failing to challenge the sufficiency of the indictments for robbery and abduction,

(Claim 4(c)).  Once again, petitioner fails to state what was defective about either indictment.  Given the findings of the trial court, where one of the charges was reduced, the record reflects a proceeding in which the charges set forth in the indictments were complete.  The claim is without merit and should be DISMISSED.

## 2.  **Procedural default**

Under Virginia law, a claim included in a petition for habeas corpus will be barred if an objection was not raised at trial and the objection presented on direct appeal.  In <u>Coppola v. Warden of Virginia State Penitentiary</u>, 282 S.E.2d 10 (Va. 1981), the Supreme Court of Virginia held that to preserve an issue for appeal and for a habeas corpus proceeding, the issue must be timely objected to at trial.  Rule 5:25 of the Supreme Court of Virginia states the contemporaneous objection rule:

> Error will not be sustained to any ruling of the trial court or the commission before which the case was initially tried unless the objection was stated with reasonable certainty at the time of the ruling . . . .

Va. S.Ct. R. 5:25.

The Supreme Court has stated that: "Under Virginia law, failure to raise a claim on direct appeal from a criminal conviction ordinarily bars consideration of that claim in any subsequent state proceeding."  <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986).  The Fourth Circuit has held that if a claim is procedurally barred in Virginia courts because it was not brought on direct appeal, it will also be barred in the federal system.  <u>Bassette v. Thompson</u>, 915 F.2d 932 (4th

Cir. 1990).[1]  In <u>Whitley v. Bair</u>, 802 F.2d 1487 (4th Cir. 1986), the court held that the failure of an inmate to directly appeal his conviction to the Supreme Court deprives

> the Virginia Supreme Court of the opportunity to
> rule on the merits of his claims.  We consider such
> failure to constitute a violation of the
> requirements of Rule 5:21, which applies to appeals
> of all Virginia cases, civil or criminal, and
> conclude that such violation constitutes a
> procedural default sufficient to preclude federal
> court review of the merits . . . .

<u>Id.</u> at 1502 (<u>citing</u> Va. S.Ct. R. 5:21, <u>repealed and reinstated in substantially similar form as</u>, Va. S.Ct. R. 5:17, 5:25).  In <u>Slayton v. Parrigan</u>, 205 S.E.2d 680, 682 (Va. 1974), the Virginia Supreme Court stated a similar proposition:  "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal or a writ of error."  The Supreme Court of the United States recently addressed the same issue in <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).  The Court held that the doctrine of procedural default will bar a federal habeas petition when a prisoner fails to meet a state procedural requirement.  <u>Id.</u> at 750.  Speaking for the Court, Justice O'Connor said:

> We now make it explicit:  In all cases in which
> a state prisoner has defaulted his federal claims
> in state court pursuant to an independent and
> adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner
> can demonstrate cause for the default and actual
> prejudice as a result of the alleged violation of
> federal law, or demonstrate that failure to
> consider the claims will result in a fundamental
> miscarriage of justice. . . . We now recognize the
> important interest in finality served by state
> procedural rules, and the significant harm to the

---

[1]  The court in <u>Bassette</u> relied on section 8.01-654(B)(2) of the Virginia Code.  <u>Bassette</u>, 915 F.2d at 936.  Section 654 (B)(2) states: "No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." VA. CODE ANN. § 8.01-654 (B)(2)(Michie 1992).

>                    States that results from the failure of federal
>                    courts to respect them.

Id. at 750.

Moreover, the federal court is required to dismiss a procedurally defaulted claim absent a showing of justifiable cause resulting in actual prejudice.  Wainwright v. Sykes, 433 U.S. 72 (1977).  Petitioner has not made a showing of justifiable cause for his failure to appeal the aforementioned issues to the Court of Appeals and the Supreme Court of Virginia.  Therefore, the issue of actual prejudice need not be addressed.

Petitioner asserts that his counsel was ineffective due to the cumulative effects of the errors raised in Claims 4(a) through (c), (Claim 5.)  However, petitioner has no basis upon which to pursue this claim in federal court.  The claim has never been presented to the Supreme Court of Virginia, but at this stage, petitioner would be barred from bringing the claim in state court.  Accordingly, the claim is simultaneously exhausted and procedurally defaulted and should be DISMISSED.

### III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that petitioner's petition for writ of habeas corpus be DISMISSED and respondent's motion to dismiss be GRANTED.  Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right."  Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.  See Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).

### IV.  REVIEW PROCEDURE

16

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten days from the date of mailing of this report to the objecting party, computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three days permitted by Rule 6(e) of said rules.  See 28 U.S.C. § 636(b)(1)(C)(2000); Fed.R.Civ.P. 72(b).  A party may respond to another party's objections within ten days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                        /s/
                              James E. Bradberry
                              United States Magistrate Judge

Norfolk, Virginia

June 10, 2008

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report was mailed this date to each of

the following:

Anthony C. Davis, #337282, <u>pro</u> <u>se</u>
Wallens Ridge State Prison
P.O. Box 759
Big Stone Gap, VA 24219


J. Robert Bryden, II, Esq.
Assistant Attorney General of Virginia
900 E. Main Street
Richmond, VA  23219


Fernando Galindo, Clerk


By _____
              Deputy Clerk

_____, 2008